NANCY J. NICHOLS, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

No. 1568.    (78 Pac. 866.)

1. **Carriers: Injuries to Passengers: Attorneys: City Judge: Right to Practice.**
   Revised Statutes 1898, section 693, provides that a justice of the Supreme Court or judge of the district court cannot act as an attorney or counsel in the court of which he is a judge, or in any other court, except in an action or proceeding to which he is a party on the record. Section 4155 declares that no justice of the peace shall be interested in any suit or action in any court of a justice of the peace, as attorney or otherwise, except when a plaintiff or defendant in an action. *Held*, that as city courts, established as provided by Sess. Laws 1901, p. 110, c. 109, are inferior courts similar to justice courts, a judge of such city court, though disqualified from practicing as an attorney in his own court, is not debarred from appearing as an attorney in an action filed in the district court in the first instance.

2. **Same: Damages: Elements: Loss of Memory: Evidence.**
   Where plaintiff alleged that, by reason of defendant's negligence, she was injured and disabled physically, mentally, internally, and permanently, evidence showing an impairment of memory, naturally resulting from the injury, was admissible.[1]

[1] Croco v. Oregon Short Line R. Co., 18 Utah 311, 320, 54 Pac. 987, 44 L. R. A. 285.

**3. Same.**

In an action for injuries to a passenger resulting from a collision, a loss of memory and an impairment of plaintiff's mental power is a proper element of damage.

**4. Same: Excessiveness: Review.**

Under the Constitution making the amount of damages recoverable a question of fact, whether the damages awarded are excessive is wholly within the province of the trial court and jury.[2]

(Decided December 10, 1904.)

Appeal from the Third District Court, Salt Lake County.—*Hon. C. W. Morse*, Judge.

Action to recover damages for personal injuries. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED.

*P. L. Williams, Esq.*, and *George H. Smith, Esq.*, for appellant.

In the case at bar, defendant objected to Judge Tanner, as one of the judges of the city court of Salt Lake, taking part as an attorney for plaintiff in the trial of the case. It is true that there is no statute in this state prohibiting a judge of any of the district courts or of the city courts from practicing law as an attorney or trying cases in any of the courts of the State. We contend however, that independent of such a prohibitory statute the common law in conformity with a sound public policy, exacts that when an attorney at law is elevated to the bench of any of the superior courts as the judge thereof, his right to practice law as an attorney, counsel-

---

[2] Braegger v. Oregon Short Line R. Co., 24 Utah 391, 68 Pac. 140,

or or advocate in any of the courts of the State, becomes suspended and continues so long as he occupies the official position. Seymour v. Ellison, 2 Cowan (N. Y.) 13; Habby v. Smith, 1 Cowan 588; Wright v. Boone, 2 Green (Ia.) 458; Smith v. Lovell, 2 Mont. 332; Evans v. Funk, 151 Ill. 650; Perry v. Bush (Fla. 1903), 35 So. 225.

"A party has a right upon cross-examination to draw out anything which would tend to contradict, weaken, modify or explain the evidence given by the witness on his direct examination, or any inference that may result from it, tending in any degree to support the opposite side of the case." Whippel v. Preece, 24 Utah 364; Short v. Hofman, 79 Cal. 404; McFadden v. Railway, 87 Cal. 464.

*Messrs. King, Burton & King* and *H. S. Tanner, Esq.,* for respondent.

The first point discussed by counsel is based upon the alleged error, that the trial court overruled defendant's objection to the appearance of H. S. Tanner, as one of the attorneys for plaintiff. At the time of the trial, Mr. Tanner was one of the city judges of Salt Lake City, and it is contended that by reason of that fact, he could not participate in the trial as one of the attorneys. As we understand counsel's position, it is that if Mr. Tanner could not act as one of the attorneys at the trial, the judgment which was obtained must be so tainted as to be voidable if not void.

We respectfully insist that counsel have argued from an erroneous premise in assuming that the city courts of Salt Lake City are courts of general jurisdiction, and we think that the cases cited are not in point and furnish no authority in support of counsel's contention.

The Constitution of Utah vests the judicial power of the State in the Senate sitting as a court of impeachment, in the Supreme Court, district courts, justice of

28 Utah—21

the peace courts, and such other courts inferior to the Supreme Court as may be established by law. Art. 8, sec. 1, Rev. St. of Utah 1898, p. 50. Pursuant to this authority, district courts were created, and general jurisdiction, in all that those words imply, was conferred upon them. They became and are courts of *general jurisdiction.* Justice of the peace courts were also created: and by the act of March 22, 1901, (Session Laws of Utah 1901, page 110) there was created within cities of the first class, courts to be known as "City Courts," and also the office of city judge.

We contend that both city and justice of the peace courts, are courts of *limited* or *special* jurisdiction. The jurisdiction of the latter courts is limited to three hundred dollars in civil matters, and to the trial of misdemeanors in criminal matters, while the jurisdiction of the former courts in civil matters is limited to cases where the demand is less than five hundred dollars. They also have exclusive original jurisdiction of cases arising in or by reason of the violation of any city ordinances, and the same powers and jurisdiction as justices of the peace in all other criminal actions. The judges of the city courts are magistrates having only the powers and jurisdiction of justices of the peace when sitting as magistrates. The law creating the city courts also limits their jurisdiction in the same manner as justices' courts are limited, so that no evidence can be given upon questions involving "the title or possession of real property, or which involves the legality of any tax, impost, toll or municipal fine, nor can any issue presenting such questions be tried by such court."

In the matter of appeals, the statute provides that from all final judgments of a city court an appeal may be taken to the district court. "in the manner and with like effect as is now, or may be provided by law for appeals from justice's courts in similar cases;" and where the appeal is taken to the district court and the judgment of the latter court upon the appeal "does not exceed one hundred dollars exclusive of costs," then

such judgment shall be final. Session Laws of Utah, 1901, pages 113, 114.

It seems clear to us from the provisions of the act establishing city courts, that they are simply courts of limited and special jurisdiction. They are only a grade higher than the justice's courts. Their jurisdiction is limited, and the subjects over which they may assume jurisdiction are limited. They have no jurisdiction over the trial of felonies, nor over questions involving the title to real estate, nor over controversies where the amount involved is five hundred dollars or more.

A city judge occupies substantially the same position as a justice of the peace. Justices of the peace may practice in any court of the State except a justice's court. Rev. St. of Utah 1898, sec. 4155. If a justice of the peace may practice, then a judge of the city court may also practice, at least, in courts of the State higher than his own.

"Ordinarily a justice of the peace is not disqualified to appear as an attorney in other courts, although it is manifestly improper for him to appear in a case on appeal from his court." 18 Am. and Eng Enc. of Law (2d. Ed.), 43.

In the section just quoted from, it is stated that in some States, by statute justices of the peace are declared to be incompetent to appear as attorneys or counsel upon the trial of an appeal from a justices court. Where two justices hold court in the same city, but have seperate offices and dockets, one is not disqualified to act as an attorney in a cause appealed from the other justice. Grady v. Sullivan, 112 Mich. 458.

It would seem from the above statements that unless prohibited by statute, that is in the absence of legislation prohibiting justices from practicing, they may do so.

It is next contended by appellant that the court erred in permitting witnesses to testify that plaintiff's memory had been impaired as the result of an injury. The complaint alleges that by reason of the collision,

plaintiff was "seriously injured, bruised and wounded, etc. . . . So that she had a miscarriage, and has otherwise become sick, sore and disabled physically, *mentally,* internally and permanently," etc.

It will thus be seen that the plaintiff claims as one of the elements of damage injury to her mind, that is, an impairment of her mental powers. Counsel's position, as we read their brief, is that there can be no recovery for impairment of the memory, even though it is the result of a physical injury.

This position seems to us unsound. Can there be any doubt that if the plaintiff, at the time of the collision, had been so thrown as to produce a fracture of the skull and her brain has been so injured as to affect her memory, she would have had no cause of action for the injury to the brain? We think the authorities are unanimous that in such a cause, she could have recovered, not only for the injury to the skull, and the body generally, and the pain and suffering resulting therefrom, but also for the injury to the mind. What difference is there in principle where the memory fails by reason of a blow upon the head, or where it is impaired as a result of being thrown violently to the floor, thereby producing a shock to the entire system.

This question has been considered in the case of Croco v. O. S. L. R. R. Co., 18 Utah 311. In that case, plaintiff, under objection, was permitted to testify, "that his memory was poorer than it was before the injury." 3 Suth., Dam. (2nd Ed.), 2261; Chicago v. McLean, 133 Ill. 148; Watson, Dam. Per. Inj., sec. 473; Wade v. Leroy, 20 How. 34; Ford v. Warner Co., 1 Marv. (Del.), 88; Railroad v. Read, 37 Ill. 485; Railway v. Braddeley, 54 Ill. 19; Bellou v. Farnerm, 11 Allen (Mass.), 73; Railway v. Silliphant, 70 Tex. 623; Wallace v. Railroad Co., 104 N. C. 442; Railroad Co. v. Hecht, 115 Ind. 444; Kennedy v. Railroad Co., 7 N. Y. Supp. 221; McLean v. Chicago, 133 Ill. 148; Keyser v. Railway Co., 66 Mich. 390: Holland v. Railroad Co., 18 Ill. App. 418.

"The authorities are unanimous that mental injury may constitute an element of damages upon the theory that a person's mind is no less a part of his person than his body." 8 Am. & Eng. Enc. of Law, 658, and cases cited; Giblin v. McIntyre, 2 Utah, 348.

BARTCH, J.—The plaintiff brought this action to recover damages for personal injuries alleged to have been received by her through the negligence of the defendant while traveling on its train. This is the second appeal herein to this court. On the former occasion the judgment was reversed, and the cause remanded for a new trial. The case is reported in 25 Utah, 240, 70 Pac. 996. The facts are there stated sufficiently to answer the purposes of this decision.

The appellant now, in the first instance, insists that the court erred in overruling the defendant's objection to the appearance of H. S. Tanner as one of the attorneys for the plaintiff, he being a judge of a city court of Salt Lake City. The contention is that, he being such a judge, his right to practice law as an attorney, counsel, or advocate, in any of the courts of the State, is suspended and continues so as long as he occupies that official position; and that his appearance in the case, and his being permitted to take part as an attorney, over the objections made, constituted reversible error.

The respondent insists that the city courts are inferior courts of limited jurisdiction, belonging to the same class as justices' courts, and that the judges of such city courts, as well as justices of the peace, have the right to practice as attorneys before courts other than their own. We think the contention of respondent must be sustained. Justices' courts are created, and inferior courts, like the city courts, are authorized, by the Constitution. Section 1, art. 8, Const. Pursuant to that section of the fundamental law, the Legislature, by act approved March 22, 1901, created "city courts" and also the office of "city judge" in cities of the first class. Chapter 109, Sess. Laws 1901, p. 110. The jurisdiction

of justices' courts is limited to $300 in civil matters (sections 688, 689, Rev. St. 1898), and to the trial of misdemeanors in criminal matters (section 691, Rev St. 1898) ; while the jurisdiction of city courts is limited in civil matters to $500, and in criminal matters, except cases arising under city ordinances, where city courts have exclusive original jurisdiction, they have the same power and jurisdiction as justices' courts. See Act 1901, supra. Like justices' courts, city courts have no power to permit parties to an action to give "evidence upon any questions which involve the title or possession of real property, or which involve the legality of any tax, impost, toll, or municipal fine." Nor can any issue presenting such a question be tried by such a court. The city judges are magistrates, but, while sitting as magistrates, they exercise the powers and jurisdiction applicable to justices of the peace. Likewise, the provision for appeals from city courts is much the same as for appeals from justices' courts. See Act, supra. It will thus be observed that city courts are quite similar to justices' courts, and that the office and duties of a city judge are substantially the same as the office and duties of a justice of the peace. Relative to the latter, it is, in section 4155, Rev. St. 1898, provided: "No justice of the peace . . . shall be interested in any suit or action in any court of a justice of the peace, as attorney, agent, collector, or otherwise, except when a plaintiff or defendant in an action." This provision of the statute clearly prohibits a justice of the peace from becoming interested in any action, in a justice's court, as an attorney unless he is a party to the action, and hence prevents him from practicing as an attorney in such a court; but there is no prohibition in the provision as to any other court, and, therefore, the statute having mentioned specifically the court in which he shall not practice, he may act as an attorney in every other court in which his license entitles him to practice. In such case the maxim, "Expressio unius est exclusio alterius," applies.

The cases cited in support of the position of appellant refer to judges of courts of general jurisdiction, and to judges of inferior courts practicing in their own courts, and have no application here. For a judge of any court to appear as counsel in the trial of causes in the court over which he presides would be in violation of sound public policy, and would be prohibited at common law regardless of statute. For the same person to appear as judge and advocate, at the same time, in the same case, would be contrary to all our notions of justice and judicial decorum. That a judge of a court of general jurisdiction, so long as he occupies his official position, cannot practice, as an attorney, in any of the courts of this State, is declared by statute, in which it is provided: "A justice of the Supreme Court, or judge of the district court, cannot act as an attorney or counsel in the court of which he is a judge or in any other court except in an action or proceeding to which he is a party on the record." Section 693, Rev. St. 1898,

It will be noticed that this prohibition extends only to judges of courts of general jurisdiction, and does not include justices of the peace or judges of limited or special jurisdiction. There is nothing in our statute or laws which prevents the judicial officers of such inferior courts as are herein considered, with such limited jurisdiction, from acting as attorneys in other courts than their own, except that such an officer would doubtless be disqualified to appear as counsel in a higher court in a case, on appeal from his own court, which was tried before him. "Ordinarily a justice of the peace is not disqualified to appear as attorney in other courts, although it is manifestly improper for him to appear in a case on appeal from his court." 18 Am. & Eng. Ency. Law, 43; Grady v. Sullivan, 112 Mich. 458, 70 N. W. 1040; Evans v. Funk, 151 Ill. 650, 38 N. E. 230.

City courts being, as we have seen, substantially of the same character as justices' courts, we are of the opinion that the judges thereof have the same right to practice in other courts as that accorded to justices of

the peace, and that the city judge in this case was not disqualified to appear herein as one of counsel by virtue of his official position.

The appellant also contends that the court erred in permitting, over the objection of the defense, the introduction of evidence to the effect that the plaintiff's memory was impaired as a result of the injury received by the accident. It is insisted that loss of memory or impairment of mind by which the memory might be effected, is not a natural, ordinary, or probable result of an injury from a railroad accident, and therefore is an injury for which there is no liability. This position is not sound as applied to this case. The plaintiff, *inter alia*, alleged in her complaint that in consequence of the collision she was "seriously injured, bruised, and wounded in her right side, right leg, arm and hand, and in her back and abdomen, so that she had a miscarriage, and has otherwise become sick, sore, and disabled physically, mentally, internally, and permanently." The defendant thus had notice that the plaintiff claimed, as one element of damage, an impairment of her mental powers, as a result of her injury, and under that plea the evidence in question was clearly admissible. Having had such notice by proper plea, the defendant was bound to expect evidence by which an effort would be made to trace the impairment of the memory to the negligent act of which complaint was made, and the defense could not, under the circumstances, avoid the effect of such evidence by objecting to its introduction. That the act which caused the collision was one of negligence does not seem to be controverted, and hence the injured person was entitled to damages for all injurious consequences, including impairment of memory, which naturally flowed from such act, and of which she was the recipient, without fault on her part.

A similar question was before this court in Croco v. O. S. L. R. Co., 18 Utah, 311, 320, 54 Pac. 987, 44 L. R. A. 285, and it was there said: "When the defendant was informed of the injury to plaintiff's head and back,

and that he was greatly and permanently injured in his body, and internally injured in his back and abdomen, by reason of which plaintiff became sick, sore, disordered, and crippled for life, from which injuries he suffered great mental distress and physical pain, he was bound to expect evidence of any sickness or injury to plaintiff of memory or eyesight the origin or aggravation of which could be traced to the negligent act complained of.''

In 8 Am. & Eng. Ency. Law, 658, it is said: ''The authorities, it is believed, all agree in holding that mental injuries may constitute an element of damages; a person's mind, it has been said, being no less a part of his person than his body; and, indeed, the sufferings of the former are oftentimes more acute and lasting than those of the latter.''

So, in Watson on Damages for Personal Injuries, section 473, the author says. ''The plaintiff may undoubtedly recover for any impairment of mental powers, faculties, or capacity produced by the injuries received. Under allegations that the plaintiff's injuries 'induced great suffering, permanent ill health, and physical weakness,' evidence is admissible of the impairment of mental powers produced thereby. So, also, impairment of memory may be shown under allegations that the plaintiff was greatly and permanently injured, externally and internally, and that by reason of such injuries he became sick, sore, and disordered, and crippled for life, from which injuries he suffered great mental distress, and was rendered unable to follow his usual occupation.''

In Ballou v. Farnum, 11 Allen, 73, Mr. Justice Colt said: ''There is a class of injuries, especially those which affect the brain and nervous system, to which this case seems to have belonged, where by common observation, the most satisfactory symptom and proof of the physical injury is to be found in the weakness and derangement of the intellectual faculties. Upon the whole,

then, upon principle we can see no error in the admission of the evidence, with the accompanying instructions. In the main it must always be left to the discretion of the jury to give such reasonable damages in these cases as in their opinion will afford compensation for the entire injury which the plaintiff proves he has sustained, subject to that power which remains in the court to set aside the verdict in those cases where the damages awarded are so excessive as to warrant the inference that some passion or prejudice or other improper considerations influenced them.''

Likewise, in T. W. & W. Ry. Co. v. Baddeley, 54 Ill. 19, 5 Am. Rep. 71, where a witness was asked, by counsel for complainant, whether the injuries affected the mind of the plaintiff, and the witness was permitted to answer, over the objection of the defense, in effect, that the plaintiff's memory was impaired, Mr. Chief Justice Breese said: ''The effort was to show by this witness the shock to plaintiff's system by the fall and consequent amputation of his arm, was so great as to deprive him in a great measure, of mental power, and this was a legitimate subject of inquiry.'' 8 Am. & Eng. Ency. Law, 660, 661; 3 Suth. Damages, secs. 944, 1244; Ford v. Warner Co., 1 Marv. 88, 37 Atl. 39; City of Chicago v. McLean, 133 Ill. 148, 24 N. E. 527, 8 L. R. A. 765; Wade v. Leroy, 20 How. (U. S.) 34, 15 L. Ed. 813; Wallace v. Railroad, 104 N. C. 442, 10 S. E. 552; Railway v. Silliphant, 70 Tex. 623, 8 S. W. 673; O. & M. R. R. Co. v. Hecht, 115 Ind. 443, 17 N. E. 297; Kennedy v. Rochester C. & B. R. Co., 7 N. Y. Supp. 221; Morgan v. Southern Pac. Co., 95 Cal. 501, 30 Pac. 601; Keyser v. C. & G. T. Ry. Co., 66 Mich. 390, 33 N. W. 867; C. & E. I. R. Co. v. Holland, 18 Ill. App. 418; Walker v. Erie Ry. Co., 63 Barb. 260.

There are several other questions presented relative to the admission of testimony, but upon careful examination we perceive no reversible error in the rulings of the court respecting them.

The appellant also complains that the damages

awarded are excessive. In answer to this we can but repeat, what has been uniformly held by this court, that the amount of the verdict, under our constitution, is a matter wholly within the province of the trial court and jury, the same being a question of fact. Where, as here, there is any evidence to support the verdict, we have no power to pass upon it, or to set the verdict aside as being excessive. Braegger v. O. S. L. R. Co., 24 Utah, 391, 68 Pac. 140.

In all such cases the trial court should exercise a sound discretion, and not permit a miscarriage of justice.

The judgment is affirmed, with costs.

BASKIN, C. J., and McCARTY., concur.