303 P.2d 279

Clarence M. STAMP, Plaintiff and Respondent,

v.

UNION PACIFIC RAILROAD COMPANY, Defendant and Appellant.

No. 8463.

Supreme Court of Utah.

Nov. 7, 1956.

**5.** 115 Utah 215, 203 P.2d 922.

Bryan P. Leverich, M. J. Bronson, A. U. Miner, Howard F. Coray, Marvin J. Bertoch, Salt Lake City; for appellant.

Rawlings, Wallace, Roberts & Black, Salt Lake City, for respondent.

WORTHEN, Justice.

Appeal from a judgment on a verdict for plaintiff. Plaintiff sustained injury to his eyes and the only matter on appeal questions whether the verdict was, as a matter of law, so excessive as to indicate that the same was given under the influence of passion or prejudice, warranting either a new trial or a remission of part of the award conditioned on new trial if plaintiff refused to remit.

No issue is raised here on liability but only the amount of damages. This action arose under the Federal Employers' Liability Act.[1]

On November 6, 1954, plaintiff, a brakeman for defendant, was injured when a signal torpedo exploded in his face. Blinded temporarily, his face appeared to be "perspiring blood" to quote one witness. Plaintiff was examined by an eye expert about nine hours after the injury. During that period plaintiff could distinguish the light of a match with his right eye only. After two days he could see with his right eye sufficiently to get around the hospital. On the third, he was unable to read a chart with his left eye. On the fourth day, the bandage was removed and plaintiff went home. He was discharged from the doctor's care on the 11th day and returned to work on the 12th. During the first few days he was off work the pain was quite intense but became progressively less during the balance of the off work period.

Plaintiff continued to suffer recurrent pain as particles which had been lodged in the eyeballs worked out. Such particles continued to work out till the time the case was tried about a year after the accident. He complained of headaches on sunny days when he didn't wear dark glasses. Plaintiff testified that he feared loss of his eyesight and that he worried, although he had not inquired of his doctors as to any justification for his fear.

Dr. Bascom W. Palmer, an eye specialist called as a witness by plaintiff, testified that he examined plaintiff on November 19, 1954, just 13 days after his injury. He testified that plaintiff's injuries were comparatively minor and that his sight was 20/20 without correction. He testified that he examined plaintiff again on September 27, 1955, the day before he testified; that in his opinion plaintiff was not in any danger; that the accident had not in any way impaired his vision, and that he so advised plaintiff at the time of his first examination 13 days after the accident, and that no damage was done to plaintiff's ability to see.

On the facts outlined above the jury awarded $12,500 damages, about $200 of which was for work lost. It deducted $2,-

1. 45 U.S.C.A. § 51 et seq.

500 on account of plaintiff's contributory negligence.

█ The jury must necessarily have awarded plaintiff $12,300 for physical and mental pain and suffering. We have held that mere excessiveness of the verdict is not necessarily the standard for determining prejudice,[2] although it might be.[3]

We are convinced that the verdict here was most excessive. In fact, to suggest that such an award could be in any way remotely related to plaintiff's injury is to ignore facts. It is inconceivable that the jury could have made such an award under the facts here presented, without having been motivated by passion or prejudice. This court in the case of Wheat v. Denver & R. G. W. R. Co.,[4] speaking through Mr. Justice Crockett said:

"We do not doubt that when a verdict is so grossly disproportionate to any amount of damages which could have fairly been awarded as to make manifest that the verdict was so suffused with passion and prejudice that the defendant could not have had a fair trial on the issues, the trial court should unconditionally grant a new trial. * *

"Notwithstanding what was said therein, we regard the true rule to be that if the verdict is so excessive as to show that it must have been motivated by prejudice or ill will toward a litigant, or that passion such as anger, resentment, indignation or some kindred emotion has so overcome or distorted the jury's reason that the verdict is vindictive, vengeful or punitive, it should be unconditionally set aside."

█ Not every verdict that appears to be excessive will warrant a new trial or a reduction in the award, but the consideration which a court owes to a jury cannot be permitted to blind our eyes where the award can be accounted for only by the presence of passion or prejudice.

In the opinion of the writer, the verdict in this case would appear to have been arrived at only under the influence of passion and prejudice.

In the case of Pauly v. McCarthy,[5] a case in which the admitted injuries were both severe and permanent, and well calculated to warrant the verdict, this court observed at page 436 of 109 Utah, and at page 126 of 184 P.2d:

"Where we can say, as a matter of law, that the verdict was so excessive as to appear to have been given under the influence of passion or prejudice,

2. Pauly v. McCarthy, 109 Utah 431, 184 P.2d 123.

3. Duffy v. Union Pacific Co., 118 Utah 82, 218 P.2d 1080.

4. Utah, 250 P.2d 932, 935.

5. 109 Utah 431, 184 P.2d 123.

and the trial court abused its discretion or acted arbitrarily or capriciously in denying a motion for new trial, we may order the verdict set aside and a new trial granted."

Attention is called to the language of this court in that case as follows, at pages 434–436 of 109 Utah, and at page 125 of 184 P.2d:

"* * * But from the language used in these and other decisions, a view developed that this court was powerless to interfere with a jury verdict, no matter how outrageous. This view was exploded in the case of Jensen v. Denver and R. G. R. Co., 44 Utah 100, 138 P. 1185, 1192, where, after citing with approval many of the cases above cited, we said: 'Still the jury cannot be permitted to go unbridled and unchecked. Hence the Code that a new trial on motion of the aggrieved party may be granted by the court below on the ground of "excessive damages *appearing to* have been given under the influence of passion or prejudice." Whenever that is made to appear, the court, when its action is properly invoked, *should require a remission or set the verdict aside and grant a new trial.*'" (Emphasis added.)

In our opinion it cannot be justly denied that the injuries suffered by the plaintiff in Duffy v. Union Pacific R. Co.[6] were of much longer duration and well calculated to result in more permanent disability. Duffy, like Stamp, suffered extreme pain; he was off work three and one-half months compared to the 13 days that plaintiff in this case was off.

The jury awarded Duffy $12,500 and deducted the sum of $3,500 for plaintiff's contributory negligence, making the net verdict $9,000. This court, in ordering a new trial unless respondent within 15 days from the date of filing the opinion file a remittitur in the sum of $4,000 and accept a net verdict of $5,000, observed at page 91 of 118 Utah, at page 1084 of 218 P.2d:

"We must assume that the jury awarded plaintiff the sum of $1,300 for loss of wages, which were his only established special damages, and this leaves the sum of $11,200 for general damages. When we get in this domain reasonable minds might differ as to what amount is excessive. However, there must be a limit beyond which a reasonable jury cannot go and the limit must be determined on the gross amount of the verdict and not the net amount. Conceding that jurors in different states and counties have different monetary standards and different ideas as to the value of pain and suffering; that present day costs of living are com-

6. 118 Utah 82, 218 P.2d 1080.

402

paratively high; that the purchasing power of the dollar has decreased to approximately one-half of what it was some ten years ago; that we are seemingly in an inflationary spiral; and, that by all reasonable standards verdicts should be larger than they were at that period; we are, nevertheless, of the opinion in this case that the damages awarded by the jury have no foundation in fact, and are so grossly excessive and exorbitant as to convince the members of this Court that the verdict is far in excess of what a reasonable jury could determine as the maximum amount awardable for this type of injury. For these reasons it appears to us to have been given under the influence of passion and prejudice.

"Previously decided cases are of little value fixing present day standards or in assisting courts in determining excessive awards. Both the court and jury are required to deal with many unknown factors and a good guess is about the best that can be hoped for. The permissible minimum and maximum limits within which a jury may operate for a given injury are presently far apart and must continue to be widespread so long as pain and suffering must be measured by money standards."

■ We are of the opinion that the award made by the jury has no basis in fact. Such an award is so excessive as to be shocking to one's conscience and to clearly indicate passion or prejudice, and it abundantly appears that there is no evidence to support or justify the verdict. The trial court abused its discretion in refusing to grant a new trial or in ordering a remittitur.

■ Holding as we do, that the verdict is without all reasonable bounds for the detailed injury, we then have the duty of ordering a new trial, or ordering a remittitur. Since the jury's verdict can be of no help to us, we must exercise our best judgment in arriving at a fair and just amount to compensate plaintiff for his injury.

■ Therefore, the judgment is reversed and a new trial granted, with costs to appellant, unless respondent within 15 days from the date of filing this opinion files with the Clerk of this court a remittitur in the sum of $4,000 and agrees to accept a net verdict of $6,000. If such a remittitur is filed, the judgment will be modified in accordance therewith, and as modified, affirmed. Each party to meet its own costs.

WADE, J., concurs in result.

McDONOUGH, C. J., concurs in the result for the reasons stated in the opinion of CROCKETT, J.

CROCKETT, Justice (concurring specially).

I add this concurrence because it appears to me that there are some general rules applicable to the supervisory power the courts have over jury verdicts which should be taken note of and preserved, although I am aware that no precise lines can be drawn with respect to such matters.

The first such rule is that courts should exercise great caution and forbearance in disturbing jury verdicts to the end that the important right of trial by jury is preserved. Moreover, after the lower court has given its approval to the award by refusing to set aside or modify the verdict, that much additional verity is thereby conferred upon it and the appellate court, a fortiori, should be more reluctant to interfere with the jury verdict and the judgment of the court because of their advantaged position in having first-hand view of the proceedings and will do so only when to permit it to stand would work a manifest injustice.[1]

It is to be recognized that there are some cases where the damages are so excessive in proportion to any reasonable compensation for the injury sustained that the court in the exercise of its inherent supervisory powers over the verdicts of juries will interfere. There has long been integrated in the law of this state a distinction between two classes of such cases. One such class is where the amount awarded is so grossly excessive as to shock the conscience, and to indicate clearly that the verdict resulted from passion, prejudice or corruption, or that the jury so totally misconceived its function, that the entire verdict is tainted with injustice, in which event a new trial should be granted unconditionally. The other class of cases is where the baneful aspects just described are not plainly manifest, but where there is an award obviously above any reasonable appraisal of the damages suffered, which may have resulted from misconception of evidence, or error in judgment, or undue liberality to the extent that the court in fairness and justice cannot permit the award to stand in the amount given. In this class of cases the court may order a remittitur, or, if the plaintiff refuses to agree thereto, grant a new trial. This does not deny him the right of trial by jury.[2]

In the first class of cases above referred to, wherein the verdict is so grossly excessive as to plainly manifest that it must have resulted from passion, prejudice, corruption or misconception of their function as jurors, the authorities almost invariably declare that the whole verdict is so tainted with improper motivation that justice cannot be done between the parties by a remit-

1. Pauly v. McCarthy, 109 Utah 431, 184 P.2d 123; Geary v. Cain, 69 Utah 340, 255 P. 418; 5 C.J.S., Appeal and Error, § 1651, p. 646.

2. Kennon v. Gilmer, 131 U.S. 22, 9 S.Ct. 696, 33 L.Ed. 110.

titur of a part of the verdict, and that it should be unconditionally set aside and a new trial granted.[3] The Colorado Supreme Court plainly so stated in Kohut v. Boguslavsky.[4] The plaintiff received a verdict of $5,000 actual damages and $10,000 exemplary damages for a beating and eviction from the church parish house. The court said:

"If * * * the verdict is excessive, and is the result of passion or prejudice, or of a total misconception of the jury's duties, then it is plainly our duty to set it aside in its entirety, and we have so held." (Citing cases)

and further

"* * * this verdict is so much in excess of what we think the injury suffered by plaintiff demand for reasonable compensation that we cannot but conclude that the jury was influenced by passion or prejudice or other improper motive * * *. For the reasons given, the judgment is reversed."

The Montana Supreme Court likewise has stated that where the conclusion is inescapable that the amount of the verdict was the result of passion and prejudice of the jury, it becomes the duty of the court to set aside the verdict and that under such circumstances, "nowhere in the law is there warrant for reducing the amount and affirming the judgment".[5]

In dealing with the question of excessive damages, our own court has on numerous occasions recognized the distinction between the two classes of cases above referred to, recognizing that a verdict may be excessive to the extent that the ends of justice demand a remittitur, but that the validity of the verdict for the plaintiff is not necessarily destroyed.[6]

The matter was discussed in Jensen v. Denver & R. G. R. Co.[7] by the late greatly respected Justice Struap, in which he said,

"* * * The court, vacating a verdict and granting a new trial by merely setting up his opinion or judgment against that of the jury, but usurps judicial power and prostitutes the constitutional trial by jury. Still the jury cannot be permitted to go unbridled and unchecked."

And, speaking with respect to excess damages, further stated,

"Whether a new trial should or should not be granted on this ground,

3. Sutherland, Damages, 4th Ed. 1504; 5 C.J.S., Appeal and Error, § 1651 and authorities therein cited.

4. 78 Colo. 95, 239 P. 876, 877.

5. Fulton v. Chouteau County Farmers' Co., 98 Mont. 48, 37 P.2d 1025, 1032.

6. Ward v. Denver & R. G. W. R. Co., 96 Utah 564, 85 P.2d 837; Baker v. Wycoff, 95 Utah 199, 79 P.2d 77; Morgan v. Ogden Union Ry. & Depot Co., 77 Utah 325, 294 P. 541; Pauly v. McCarthy, 109 Utah 431, 184 P.2d 123.

7. 44 Utah 100, 138 P. 1185, 1192.

of necessity, must largely rest within the sound discretion of the trial court. Still that court, in such particular, is not supreme or beyond reach. * * * A ruling granting or refusing a motion for a new trial is certainly reviewable * * *. Our power to correct a plain abuse of discretion or undo a mere capricious or arbitrary exercise of power cannot be doubted."

And he demonstrates that the verdict may be so "enormous or flagrantly outrageous" that its rectification is a matter of law and not the reviewing of an issue of fact. The soundness of his reasoning and pronouncements on this subject have been generally recognized in this jurisdiction for upwards of 40 years and have provided the basis for our procedure and many subsequent decisions of this court on the subject.

In the case of Eleganti v. Standard Coal Co.,[8] the trial court in accordance with the Jensen case, ordered a verdict of $3,400 reduced to $2,000, or that the plaintiff take a new trial. On appeal, Justice Frick recited:

"It is now contended by counsel for defendant that the court erred in not setting aside the entire verdict and in not granting a new trial."

which contention he rejected saying:

"The mere fact that the verdict of the jury may be excessive is not alone

8. 50 Utah 585, 168 P. 266, 268.

sufficient to show that it is the result of passion or prejudice."

and plainly indicating in the opinion that it was proper for the court to order remission of the excess where passion and prejudice were not necessarily present, but that if they had been, an unconditional new trial should have been granted. Another case definitely articulating this principle is McAfee v. Ogden Union Ry. & Depot Co.,[9] in which the court stated:

"* * * Verdicts will not be interfered with by this court on account of being excessive unless the facts are such that the excess can be determined as a matter of law, or that the verdict is so excessive as to be shocking to one's conscience and to clearly indicate passion, prejudice or corruption on the part of the jury. When a verdict is so excessive that it clearly indicates passion and prejudice, a new trial should be granted unconditionally."

Any other rule than that requiring the entire verdict to be set aside where it is so wholly disproportionate to any possible damage as to indicate that it could not have resulted except from passion or prejudice, would seem illogical and unjust to litigants. They are entitled to an impartial trial by jurors who are fair-minded, dispassionate, and not motivated by spite, prejudice or ill will. If a verdict which

9. 62 Utah 116, 218 P. 98, 104.

seems clearly to have been motivated by such influences is not vacated, and a reviewing court orders a remittitur of part of the damages only, then sanction would be given to the determination of the issues of liability by jurors who were obviously influenced by improper motivations. This is plainly inconsistent with the purpose of trial by fair and impartial jury.

We recently had occasion to consider this matter and made the statement:

"* * * [We] regard the true rule to be that if the verdict is so excessive as to show that it must have been motivated by prejudice or ill will toward a litigant, or that passion such as anger, resentment, indignation or some kindred emotion has so overcome or distorted the jury's reason that the verdict is vindictive, vengeful or punitive, it should be unconditionally set aside." [10]

Some statements in the main opinion would seem to indicate that the verdict here would come under that definition and require a new trial. However, it is my impression that the majority of the court believe that this case actually falls within the second class of cases referred to in this opinion, and that while the damages are excessive to the extent that the verdict should not be permitted to stand in the amount given, there is no indication that the verdict is so tainted with passion and prejudice

that it should be unconditionally set aside. Therefore, justice may be served by ordering the alternative remittitur of the verdict, or the granting of a new trial, as indicated in the opinion of Justice Worthen.

HENRIOD, Justice (concurring in result).

I concur in the result, since I can subscribe to the remission adjudged, but not to the conclusion reached that the verdict itself obviously was so excessive as to establish passion or prejudice in its rendition. I think there may have been excessiveness but that the verdict necessarily was not steeped in passion or prejudice.

I subscribe to the conclusions of the Wheat case mentioned, and also to those portions of Mr. Justice Crockett's concurrence which support the following doctrine: That if three or more of the justices of this court decide: 1) That the excessiveness of the verdict itself appears to have been so aggravated as to convince us that it was conceived and born of passion or prejudice or both, the only fair thing to do is to grant a new trial unconditionally; or 2) that if a showing has been made in a timely and appropriate manner, which convinces us that passion and/or prejudice sired the verdict which we deem excessive, the only fair thing to do is to grant a new trial unconditionally; or 3) if we are convinced that the verdict was not merely ex-

10. Wheat v. Denver & R. G. W. R. Co., Utah, 250 P.2d 932, 935.

cessive but so excessive as to appear quite unfair as it related to any injury shown, which verdict, however, appeared not to have been engendered by passion or prejudice, but perhaps by mistake, error in calculation, clerical error uncorrected, or other honest departure that resulted in a verdict unintended, quite unreasonable or for some other unexplained reason having no logical or sensible relation to the damage, a remission of what we consider to have been unfairly excessive should be adjudged, conditioned on the granting of a new trial if such remission be unacceptable to the beneficiary of the verdict.